2012 CO 73

**Yanick KAZADI, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 11SC264.**

Supreme Court of Colorado, En Banc.

Dec. 20, 2012.

The Noble Law Firm, LLC, Antony M. Noble, Lakewood, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Emmy A. Langley, Assistant Attorney General, Denver, Colorado, Attorneys for Respondent.

Joseph Law Firm, P.C., Aaron C. Hall, Aurora, Colorado, Stern & Curray, LLC, Emily Assunta White, Denver, Colorado, Attorneys for Amicus Curiae American Immigration Lawyers Association of Colorado.

The Meyer Law Office, P.C., Hans Meyer, Denver, Colorado, The University of Colorado Law School, Violeta R. Chapin, Boulder, Colorado, Attorneys for Amicus Curiae Colorado Criminal Defense Bar.

Justice HOBBS delivered the Opinion of the Court.

¶ 1 We granted certiorari to review the decision of the Colorado Court of Appeals in *People v. Kazadi,* 284 P.3d 70 (Colo.App. 2011).[1] In this case we must determine whether a defendant who has pleaded guilty in return for a deferred judgment and sentence may seek postconviction review of his felony plea under Crim. P. 35(c). We agree with the Court of Appeals that he may not. Nevertheless, he can seek to withdraw the guilty plea pursuant to Crim. P. 32(d).

¶ 2 We hold that the deferred judgment statute, section 18–1.3–102, C.R.S. (2012), read in conjunction with Crim. P. 35(c), precludes Kazadi from challenging his felony plea under Crim. P. 35(c) while his deferred judgment and sentence are still in effect. However, he may move to withdraw his guilty plea under Crim. P. 32(d). This rule allows a defendant to move for withdrawal of a guilty plea before sentence is imposed or imposition of sentence is suspended. As grounds for such a motion, a defendant may raise ineffective assistance of counsel.

## I.

¶ 3 The prosecution charged Yanick Kazadi, a legal permanent resident born in the Congo who entered the United States in 2003 at age thirteen, of possession with intent to distribute marijuana, a class four felony, in violation of former section 18–18–406(8)(b), C.R.S. (2008) (repealed 2010), and possession of not more than one ounce of marijuana, a class two petty offense under section 18–18–406(1), C.R.S. (2012). The police arrested Kazadi in November 2008 while he was riding as a passenger in a speeding car. After stopping the car, the police officer identified the vehicle's license plates as stolen, and pulled all four passengers out of the car. When a bullet fell out of the driver's lap when exiting the car, officers handcuffed all passengers and conducted a routine search, finding three guns, two bullet magazines, numerous baggies of marijuana, two baggies of ecstasy pills, and over $400 in cash.

¶ 4 Kazadi pleaded guilty to possession with intent to distribute marijuana, a class four felony, and possession of a schedule V controlled substance (codeine), a class one misdemeanor. In a written plea agreement, Kazadi and the prosecution stipulated to a deferred judgment and sentence for the felony count and a probationary sentence for the misdemeanor. The Stipulation For Deferred Judgment And Sentence the parties entered into recites, in part:

> The District Attorney further agrees that if the Defendant satisfactorily complies with the conditions upon which *the entry of*

---

1. The issue for which we granted certiorari is: Whether a criminal defendant has the right to apply for postconviction review of a deferred sentence pursuant to section 18-1-410, C.R.S. (2010), and Crim. P. 35(c).

*judgment of conviction is deferred and the imposition of sentence is deferred* and satisfactory compliance by the Defendant with the terms of probation is shown, then upon the expiration of TWO YEARS from the entry of the Defendant's guilty plea, the District Attorney will consent to the entry by the Court of an order allowing the Defendant to withdraw his previously entered plea of guilty; and, if the Court so allows the withdrawal of the guilty plea, the *District Attorney will thereupon move for dismissal with prejudice of the charge* to which entry of judgment of conviction was deferred in the case in which this stipulation is filed.

(Emphasis added).

¶ 5 The district court conducted a providency hearing and accepted Kazadi's guilty pleas, ordering a two-year deferred judgment and sentence for the felony count and two years of probation for the misdemeanor.

¶ 6 Kazadi signed a Crim. P. 11 guilty plea advisement that included a clause about possible immigration removal consequences:

> If I am not a citizen of the United States, this guilty plea may cause removal (formerly "deportation"), exclusion for admission to the United States or denial of naturalization. I further have been advised that for certain felonies, federal statutes could require removal and permanent exclusion. I have conferred with counsel regarding this and understand that I have a right to confer with immigration counsel. I understand that this court has no authority regarding immigration issues. No promises or representations have been made to me by this Court regarding immigration consequences other than the plain statements made in the paragraph.

2. These charges were later released.

3. Kazadi faces deportation under 8 U.S.C. §§ 1227(a)(2)(A) (iiii) (alien convicted of aggravated felony is deportable), 1101(a)(43)(B) (defining "aggravated felony" to include illicit trafficking in a controlled substance), 1101(a)(48)(A) (defining "conviction" as a guilty plea, subjecting a defendant to presumptive mandatory deportation).

¶ 7 In February 2009, Immigrations and Customs Enforcement placed a detainer on Kazadi following a later arrest by the Aurora Police Department.[2] Immigration and Enforcement Agency officials took Kazadi into custody on April 1, 2009, for removal purposes.[3]

¶ 8 Kazadi subsequently filed a Crim. P. 35(c) motion in the district court challenging his guilty pleas based on constitutionally ineffective assistance of counsel. Kazadi argued that counsel did not inform him of the possible removal consequences of his plea, and, but for the ineffective assistance, he would not have pleaded guilty. The district court denied Kazadi's Crim. P. 35(c) motion without a hearing. It ruled that, by signing the Crim. P. 11 advisement, Kazadi was aware of the possible immigration penalties when he entered his plea and was not prejudiced by counsel's lack of advisement.

¶ 9 On appeal, with regard to Kazadi's felony conviction, the court of appeals determined that a deferred judgment is not a "judgment of conviction" reviewable under Crim. P. 35(c).[4] We agree and affirm the judgment of the court of appeals. Both parties argued to us in their briefs and oral arguments that Kazadi should be able to pursue a Crim. P. 32(d) motion to withdraw his felony guilty plea if we determine that relief under Crim. P. 35(c) is inapplicable. We conclude that Kazadi may move to withdraw his guilty under Crim. P. 32(d).

## II.

¶ 10 We hold that the deferred judgment statute, section 18–1.3–102, read in conjunction with Crim. P. 35(c), precludes Kazadi from challenging his felony plea under Crim. P. 35(c) while his deferred judgment and sentence are still in effect. However, he may

4. As to Kazadi's misdemeanor conviction, the court of appeals ruled that the district court erred in denying his motion for postconviction review, finding that he sufficiently alleged ineffective assistance of counsel that would support finding that he was entitled to a hearing under Crim. P. 35(c). There is no claim relating to his misdemeanor conviction presented to us, and the issue of whether Kazadi received ineffective assistance of counsel is similarly not before us.

move to withdraw his guilty plea under Crim. P. 32(d). This rule allows a defendant to move for withdrawal of a guilty plea before sentence is imposed or imposition of sentence is suspended. As grounds for such a motion, a defendant may raise ineffective assistance of counsel.

## A.

### Standard of Review

¶ 11 Interpretation of a statute is a question of law, which we review de novo. *Robles v. People*, 811 P.2d 804, 806 (Colo. 1991). Our fundamental responsibility in construing a statute is to ascertain and give effect to the purpose and intent of the General Assembly in enacting it. *Alvarado v. People*, 132 P.3d 1205, 1207 (Colo.2006). In construing a statute, we strive to give effect to the intent of the legislature and adopt the statutory construction that best carries out the provisions and purposes of the act. *Thomas v. F.D.I.C.*, 255 P.3d 1073, 1077 (Colo.2011); *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo.2005). We first look to the language of the statute to determine the legislature's intent. *Thomas*, 255 P.3d at 1077. As with any potential conflict between legislative provisions, we endeavor to give effect to the language and intent of both if possible. *State Dep't of Labor & Emp't v. Esser*, 30 P.3d 189, 194 (Colo.2001). Under the Colorado Constitution, we have authority to promulgate and interpret the Colorado Rules of Criminal Procedure. Colo. Const. art. VI, § 21. To ascertain the appropriate construction of a rule of criminal procedure, we employ the same interpretive rules applicable to statutory construction. *People v. Angel*, 2012 CO 34, ¶ 17, 277 P.3d 231; *Peterson v. People*, 113 P.3d 706, 708 (Colo.2005).

## B.

### Applicable Law

#### 1. Deferred Judgment Statute, Section 18–1.3–102

¶ 12 Colorado's deferred judgment statute, section 18–1.3–102, provides a unique alternative to the typical criminal case. It authorizes a trial court to defer judgment and sentencing when accepting a guilty plea and continue the case for a period up to four years from the date of the plea. § 18–1.3–102(1)(a); *People v. Widhalm*, 642 P.2d 498, 500 (Colo.1982). The statute provides, in part, as follows:

> In any case in which the defendant has entered a plea of guilty, the court accepting the plea has the power, with the written consent of the defendant and his or her attorney of record and the district attorney, to *continue the case for the purpose of entering judgment and sentence upon the plea of guilty* . . . .
>
> . . . .
>
> Upon full compliance with such conditions by the defendant, the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice. Such stipulation shall specifically provide that, *upon a breach by the defendant of any condition regulating the conduct of the defendant, the court shall enter judgment and impose sentence upon such guilty plea.* . . .

§§ 18–1.3–102(1)(a), (2) (emphasis added). As a condition of continuing the case, the trial court is empowered to implement probation-like supervision conditions that the defendant must adhere to. § 18–1.3–102(2); *see People v. Manzanares*, 85 P.3d 604, 607 (Colo.App.2003) (finding that "[a] deferred judgment is akin to a sentence of probation"). If the defendant completes the term of the deferred sentence without violating a condition, his guilty plea is withdrawn and his case must be dismissed with prejudice. § 18–1.3–102(2).

¶ 13 If the defendant violates any of the stipulated conditions, however, the court has authority to revoke the deferral and enter judgment and sentence upon his guilty plea. *Id.* A deferred sentence is a unique dispositional alternative to the traditional plea of guilty. *Widhalm*, 642 P.2d at 500. It is a privilege, whereby the defendant is the primary beneficiary of a process that may result in the dismissal of the charges against him. *Manzanares*, 85 P.3d at 607.

**2. Motion for Withdrawal of Guilty Plea Available Only Before Sentence Is Imposed or Imposition of Sentence Is Suspended, Crim. P. 32(d)**

¶ 14 A defendant may seek to withdraw a plea of guilty only before sentence is imposed or the imposition of a sentence is suspended pursuant to Crim. P. 32(d). *See Glaser v. People,* 155 Colo. 504, 507, 395 P.2d 461, 462 (1964) (finding that "[t]here is no ambiguity in the rule as adopted by this court. In plain language it says that a motion to withdraw a plea of guilty may be made only before sentence is imposed."). The rule provides, in part, as follows:

> A motion to withdraw a plea of guilty or of nolo contendere may be made only before sentence is imposed or imposition of sentence is suspended.

Crim. P. 32(d). One does not have an absolute right to withdraw a plea of guilty. *People v. Riley,* 187 Colo. 262, 265, 529 P.2d 1312, 1313 (1975); *Maes v. People,* 155 Colo. 570, 574, 396 P.2d 457, 459 (1964). To warrant the withdrawal of a guilty plea, a defendant has the burden of establishing a "fair and just reason" for the withdrawal, *People v. Chippewa,* 751 P.2d 607, 609 (Colo.1988), and there must be a showing that justice will be subverted by denying the motion, *Maes,* 155 Colo. at 575, 396 P.2d at 459. Such a showing includes instances where a defendant was surprised or influenced into a plea of guilty to which the person had a defense; where a plea of guilty was entered by mistake or under a misconception of the nature of the charge; where such plea was entered through fear, fraud, or official misrepresentation; where it was made involuntarily; or where ineffective assistance of counsel occurred in the process. *Chippewa,* 751 P.2d at 609; *People v. Pozo,* 746 P.2d 523, 525–26 (Colo.1987); *see also Padilla v. Kentucky,* 559 U.S. 356, 130 S.Ct. 1473, 1478, 176 L.Ed.2d 284 (2010).

¶ 15 The trial court has discretion to determine whether a defendant has established a fair and just reason for withdrawal, and we will not overturn denial of a motion to withdraw a guilty plea absent an abuse of that discretion. *Crumb v. People,* 230 P.3d 726, 730, 733 (Colo.2010) (finding that a court should consider a non-exclusive list of factors, including whether the prosecution would be prejudiced by the withdrawal of the guilty plea, whether the defendant promptly moved to withdraw the guilty plea, and whether the defendant has shown that justice will be subverted if the motion is denied); *People v. Gutierrez,* 622 P.2d 547, 559 (Colo. 1981).

**3. Crim. P. 35(c) Not Applicable to Review a Deferred Judgment**

¶ 16 Crim. P. 35(c) allows a defendant to challenge a judgment of conviction. The rule expressly limits the filing of such a motion for relief to one who is aggrieved and claiming a right to be released or to have a judgment of conviction set aside. Crim. P. 35(c)(3). Although there is no constitutional right to postconviction review, defendants are entitled to file postconviction motions for relief in the trial court that imposed sentence, even if convictions were affirmed on appeal. Crim. P. 35(c)(2); *People v. Germany,* 674 P.2d 345, 350 (Colo.1983). The rule provides, in part, as follows:

> Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right *to make application for postconviction review upon the grounds hereinafter set forth.* ...
>
> . . . .
>
> *One who is aggrieved and claiming either a right to be released or to have a judgment of conviction set aside* on one or more of the grounds enumerated in section (c)(2) of this Rule may file a motion in the court which imposed the sentence to vacate, set aside, or correct the sentence, or to make such order as necessary to correct a violation of his constitutional rights....

Crim. P. 35(c)(2), (3) (emphasis added).

¶ 17 To obtain postconviction review under Crim. P. 35(c), a defendant must allege that (1) the conviction was obtained or sentence imposed in violation of the state or federal constitution; (2) the statute he was

convicted under is unconstitutional, or his actions were constitutionally protected; (3) the court did not have either subject matter or personal jurisdiction over the dispute; (4) there were material facts that the defendant or his attorney could not have known prior to the submission of the issues to the court or jury, and which would require vacation of the conviction or sentence in the interest of justice; or (5) any other grounds properly the basis for collateral attack upon a criminal judgment. Crim. P. 35(c)(2)(I)-(III), (V)-(VI). A court must hold an evidentiary hearing on a Crim. P. 35(c) motion unless the motion, the files, and the record clearly establish that the allegations in the motion lack merit and do not entitle the defendant to relief. *White v. Dist. Ct.*, 766 P.2d 632, 634 (Colo.1988).

## C.

### Application to this Case

¶ 18 Kazadi argues that the term "convicted of a crime" contained in Crim. P. 35(c)(2) means that a person who has pleaded guilty in return for a deferred judgment and sentence may have the plea reviewed under the provisions of Crim. P. 35(c). He reasons that the guilty plea itself constitutes a "conviction." However, Crim. P. 35(c)(3) requires that the trial court must have sentenced the defendant and must have entered a "judgment of conviction" before a defendant can challenge the conviction: "One who is aggrieved and claiming either a right to be released or to have a judgment of conviction set aside ... may file a motion in the court which imposed sentence." Kazadi's contention ignores the provisions of the deferred judgment statute, section 18–1.3–102, and the stipulation in this case, both of which provide that he will not be sentenced and a judgment of conviction will not be entered while the stipulation is in effect. In *People v. Carbajal*, 198 P.3d 102, 105 (Colo.2008), we had the opportunity to comment on postconviction review of deferred judgments, stating that "a deferred judgment is not a final judgment, and thus may not be subject to either Crim. P. 35 review or direct appellate review until revoked." *Accord In re K.W.S.*, 192 P.3d 579, 580–81 (Colo.App.2008); *Manzanares,*

85 P.3d at 611; *People v. Anderson,* 703 P.2d 650, 652 (Colo.App.1985). Here, as Kazadi concedes, there has not been an entry of judgment or sentence, only a continuation of the case. We determine that *Carbajal* is precedent for our ruling today.

¶ 19 Kazadi cannot collaterally attack his guilty plea pursuant to Crim. P. 35(c) because his prosecution has been continued. The stipulation Kazadi and the prosecution entered clearly supports this conclusion, stating the charges will be dismissed "if the Defendant satisfactorily complies with the conditions upon which the *entry of judgment of conviction is deferred* and the *imposition of sentence is deferred* ...." (Emphasis added). A deferred judgment is not a judgment of conviction or a final, appealable judgment. *See Ellsworth v. People,* 987 P.2d 264, 266 (Colo.1999) (holding that until a sentence is imposed, there can be no final judgment); *Widhalm,* 642 P.2d at 500 (holding that a deferred judgment "permits a defendant to plead guilty without the entry of a judgment of conviction").

¶ 20 In the alternative, given our holding that Crim. P. 35(c) does not apply to this case, Kazadi and the prosecution agree that Crim. P. 32(d) is an appropriate vehicle for withdrawal of guilty pleas involving deferred judgments. In *Anderson,* a division of the court of appeals held that it is not. 703 P.2d at 652. Both parties assert that Crim. P. 32(d) is available in a deferred judgment context, arguing that *Anderson* was wrongly decided in finding that "a deferred judgment is the equivalent of suspension of sentence," making a Crim. P. 32(d) motion untimely. *Id.* We agree. Kazadi may pursue a Crim. P. 32(d) motion to withdraw his guilty plea. The court of appeals panel erred in Anderson, and we overrule that decision. The plain language of Crim. P. 32(d) states: "[a] motion to withdraw a plea of guilty or of nolo contendere may be made only *before sentence is imposed* or imposition of sentence is suspended." (Emphasis added). A deferred judgment is not the equivalent of a suspension of sentence because no sentence has been imposed or suspended. Rather, a deferred judgment is

a continuance of the defendant's case in lieu of the imposition of sentence, where a sentence may be issued if the defendant fails to abide by prescribed conditions. Therefore, a deferred judgment fits within the scope of Crim. P. 32(d).

¶ 21 Kazadi faces mandatory removal by virtue of a guilty plea that he cannot challenge through a Crim. P. 35(c) motion. Under Crim. P. 32(d), Kazadi has the burden to establish a fair and just reason for withdrawal of his guilty plea. Ineffective assistance of counsel at the time a guilty plea is entered may constitute a fair and just reason to withdraw the plea prior to sentencing. *See People v. Lopez,* 12 P.3d 869 (Colo.2000); *Riley,* 187 Colo. at 265, 529 P.2d at 1313. In *Kazadi*'s case, ineffective assistance of counsel would be a fair and just basis for withdrawal of his guilty plea pursuant to Crim. P. 32(d).

¶ 22 In conclusion, pursuant to section 18–1.3–102 and the stipulation between the parties in this case, the trial court has not sentenced Kazadi and no judgment of conviction has been entered against him. Therefore, he may seek to withdraw his guilty plea pursuant to Crim. P. 32(d), but he may not have his conviction reviewed under Crim. P. 35(c).[5]

### III.

¶ 23 Accordingly, we affirm the judgment of the court of appeals.

Chief Justice BENDER dissents.

Chief Justice BENDER, dissenting.

¶ 24 The majority's holding denies Kazadi, who pleaded guilty to felony and misdemeanor drug charges and who stipulated to a deferred judgment on the felony charge and to a sentence of probation on the misdemeanor charge, the opportunity to use Crim. P. 35(c) to challenge the constitutional validity of his plea. Maj. op. at ¶¶ 1–2, 9–10, 16, 18–22. Kazadi has alleged that his recognized Sixth Amendment right to be advised by his attorney of the deportation consequences of his guilty plea was violated and that he would not have pleaded guilty or stipulated to a deferred judgment had he known that doing so would subject him to mandatory removal from this country, where he has been living as a legal permanent resident since he was thirteen years old. The majority's holding diminishes the purpose of Rule 35(c), which is to implement the unique statutorily created mechanism for postconviction review of alleged constitutional violations that is guaranteed to every convicted defendant by section 18–1–410, C.R.S. (2012).[1] *See Robbins v. People,* 107 P.3d 384, 387 (Colo.2005) ("[Rule 35(c)] affords every person convicted of a crime the right to seek postconviction review upon the grounds that the conviction was obtained in violation of the Constitution or laws of the United States or the constitution or laws of this state."). The majority does not interpret the language of section 18–1–410 but rather interprets only the language of Rule 35(c)(3), and holds that a defendant's ability to pursue section 18–1–410's statutorily guaranteed postconviction relief requires not a conviction but rather a "judgment of conviction." Maj. op. at ¶¶ 18–19.

¶ 25 In so holding, the majority denies a defendant who has pleaded guilty to a crime and who has stipulated to a deferred judgment section 18–1–410's right to vindicate constitutional rights through the procedural mechanism set forth in Rule 35(c). In my view, it is incongruous that a defendant who has received the privilege and benefit of a

---

5. Kazadi argues, in the alternative, that Crim. P. 35(c) conflicts with and is preempted by the postconviction statute, section 18–1–410, C.R.S. (2012), by restricting relief under the rule to those aggrieved by entry of a "judgment of conviction." In this case, we need not explore the many uses of the word "conviction" in that statute or in our case law because section 18–1.3–102 plainly constitutes a particularized procedure for continuance of a case that is subject to dismissal, negating the guilty plea.

1. Rule 35(c) is authorized by section 18–1–410. § 18–1–410(2)(a) ("[P]rocedures to be followed in implementation of the right to postconviction remedy shall be as prescribed by rule of the supreme court of the state of Colorado."). This is important because the postconviction relief offered by Rule 35(c) is derived entirely from section 18–1–410 and its bounds must therefore be as expansive as those suggested by the statutory language.

more lenient deferred judgment would have a more limited right of postconviction review to this constitutional claim than a defendant who has received a more traditional sentence to prison, jail, or probation, particularly because "[t]he conditions imposed in the stipulation [for the deferred judgment] shall be similar in all respects to conditions permitted as part of probation" and may require the defendant to perform community service, to make donations, or to pay restitution.[2] § 18-1.3-102(2); *see also People v. Manzanares*, 85 P.3d 604, 607 (Colo.App.2003) ("A deferred judgment is akin to a sentence of probation.").

¶ 26 Because section 18-1-410 provides that "every person convicted of a crime is entitled as a matter of right to make applications for postconviction review," and because all defendants who plead guilty are considered to be convicted[3] and suffer the same collateral consequences of the conviction,[4] I would construe section 18-1-410 to include defendants who plead guilty and who stipulate to a deferred judgment. Although a defendant who completes the requirements of a deferred judgment will no longer face all of the collateral consequences of a convic-

tion,[5] the irreversible effects of some collateral consequences may have already occurred—such as the mandatory deportation to Congo that Kazadi faces here—and may therefore render the benefit of a successfully completed deferred judgment of little or no value to the defendant.[6] Moreover, a deferred judgment's promise of dismissal may entice an ill-or unadvised defendant to plead guilty and to stipulate to the deferred judgment based on the defendant's incorrect but rational assumption that he or she will avoid deportation by complying with the terms of the deferred judgment. To avoid this incongruity, and consistent with the purpose of section 18-1-410 and Rule 35(c), I would hold that every defendant who pleads guilty and who faces the collateral consequences of his or her conviction for the term of the deferred judgment should have the same statutory right to challenge the constitutionality of his or her plea under section 18-1-410 and through Rule 35(c).

¶ 27 Here, Kazadi has alleged that he would not have pleaded guilty in exchange for a deferred judgment had his attorney advised him that doing so could result in his

---

2. I also disagree with the majority's rationale that a deferred judgment constitutes a continuation of the prosecution of a case. Maj. op. at ¶ 19. Although a deferred judgment "continue[s]" the case for the purpose of entering judgment and sentence upon the plea of guilty," § 18-1.3-102(1)(a), a deferred prosecution occurs only "prior to trial or entry of a plea of guilty," § 18-1.3-101(1).

3. *See* § 16-7-206(3), C.R.S. (2012) (stating that a court's acceptance of a guilty plea "acts as a conviction for the offense").

4. Collateral consequences of a plea of guilty in Colorado include: the loss of a driver's license for certain offenses (section 42-2-125(1), C.R.S. (2012)); the loss of the right to possess firearms if convicted of a felony (section 18-12-108, C.R.S. (2012)); the inability to adopt a child if convicted of certain offenses, including any crime involving violence (section 19-5-210(4)); the inability to change one's name (section 13-15-101(2)(b), C.R.S. (2012)); the inability to obtain a professional license in certain fields, including law enforcement and education, or the possible revocation of such a license (section 24-5-101, C.R.S. (2012)); the inability to obtain a U.S. passport (22 C.F.R. § 51.60 (2012)); and the loss of eligibility for federal benefits if convicted of any federal or state drug offense (21

U.S.C. § 862 (2012)). *See* Jennifer L. Bahnson & Robert J. Dieter, *Collateral Effects of a Criminal Conviction in Colorado*, 35 Colo. Law. 39 (June 2006). A plea of guilty may also result in an administrative discharge from the armed services or in an administrative action by a school or university if the defendant is a student. *See id.; see also* 15 Colo. Prac., Criminal Practice & Procedure § 15.47 (2d ed. 2004).

5. This is so because "[u]pon full compliance with such conditions by the defendant, the plea of guilty previously entered shall be withdrawn and the charge upon which the judgment and sentence of the court was deferred shall be dismissed with prejudice" pursuant to section 18-1.3-102(2). *See, e.g.*, § 24-5-101(1)(d), C.R.S. (2012) (Upon determining that an applicant for employment at a state agency has completed a deferred judgment, "the agency shall not use that information as a basis for not making an offer of employment.").

6. *See, e.g., M.T. v. People*, 2012 CO 11, ¶¶ 11-22, 269 P.3d 1219 (holding that a defendant who has successfully completed a deferred judgment in a case involving unlawful sexual behavior and whose case has been withdrawn and dismissed is nevertheless statutorily prohibited from sealing the records of the case).

mandatory deportation to Congo, a country in which Kazadi claims to have no friends, family, or other connections. Kazadi's Sixth Amendment right to be advised of the immigration consequences associated with pleading guilty has been widely recognized by both Colorado and United States Supreme Court precedent. As such, Kazadi, who was convicted on his guilty plea, should not be denied the ability to challenge that conviction under Rule 35(c) solely because he received a deferred judgment instead of a traditional sentence to prison, jail, or probation. Hence, I disagree with the majority and respectfully dissent. I would reverse and remand for a Rule 35(c) hearing on Kazadi's Sixth Amendment ineffective assistance of counsel claim.

## I.

¶ 28 Within our criminal justice system, Rule 35(c) is intended to correct constitutional error and to prevent constitutional injustice. *People v. Rodriguez*, 914 P.2d 230, 249, 252 (Colo.1996) (noting that "Rule 35 proceedings are intended to prevent injustices after conviction and sentencing" and "to prevent constitutional injustice and to bring finality to judgment"). To that end, Rule 35(c) "provides broad and inclusive postconviction remedies." *Naranjo v. Johnson*, 770 P.2d 784, 787 (Colo.1989).

¶ 29 In *People v. Schneider*, 25 P.3d 755 (Colo.2001), we examined whether a defendant who has pleaded guilty to a crime is entitled to postconviction relief under Rule 35(c). We refused to apply the rule strictly because doing so would prevent fairness and justice. *Id.* at 760; *see also* § 2–4–201(1)(c), C.R.S. (2012) (stating that, when interpreting statutes, we should presume that "[a] just and reasonable result is intended"). In *Schneider*, we interpreted Rule 35(c) as "grant[ing] to 'every person' the right to seek postconviction relief—not just to individuals convicted after a trial." 25 P.3d at 760. We reasoned that "[i]n an era in which scientific techniques for analyzing evidence are advancing at a rapid pace, precluding the withdrawal of a plea on the basis of later-discovered evidence could work a significant injustice." *Id.* We recognized that protecting fairness and justice by extending Rule 35(c)'s

postconviction remedies to defendants convicted on a plea was important because defendants sometimes "choose to enter guilty pleas for reasons other than clear guilt." *Id.*

¶ 30 Indeed, "criminal justice today is for the most part a system of pleas, not a system of trials." *Lafler v. Cooper*, — U.S. —, 132 S.Ct. 1376, 1389, 182 L.Ed.2d 398 (2012). "[P]lea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages." *Missouri v. Frye*, — U.S. —, 132 S.Ct. 1399, 1407, 182 L.Ed.2d 379 (2012). We have previously determined that negotiating a plea bargain is a critical phase for purposes of the Sixth Amendment right to effective assistance of counsel. *People v. Roybal*, 618 P.2d 1121, 1126 (Colo.1980); *see also Hill v. Lockhart*, 474 U.S. 52, 57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

¶ 31 We have also previously determined that attorneys practicing in Colorado "must inform themselves of material legal principles that may significantly impact the particular circumstances of their clients," including "thorough knowledge of fundamental principles of deportation law" if the attorney has sufficient information to form a reasonable belief that his or her client is an alien. *People v. Pozo*, 746 P.2d 523, 529 (Colo.1987). The United States Supreme Court has held that "[b]efore deciding whether to plead guilty, a defendant is entitled to the effective assistance of competent counsel." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1480–81, 176 L.Ed.2d 284 (2010) (internal quotation omitted). In the deportation context, "counsel must inform her client whether his plea carries a risk of deportation" because the "seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families" demand no less under the Sixth Amendment. *Padilla*, 130 S.Ct. at 1486.

¶ 32 Kazadi, in his postconviction motion, has alleged that his Sixth Amendment right to effective assistance of counsel was violated because his lawyer did not advise him that

pleading guilty could lead to mandatory deportation under federal immigration law. *See* 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien ... *shall,* upon order of the Attorney General ... *be removed* if the alien is ... convicted of an aggravated felony at any time after admission.") (emphasis added); *see also* 8 U.S.C. § 1101(a)(43)(B) (defining "aggravated felony" to include "illicit trafficking in a controlled substance"); 8 U.S.C. § 1101(a)(48)(A) ("The term 'conviction' means ... the alien has entered a plea of guilty or nolo contendere.").

¶ 33 Kazadi has been living in the United States as a lawful permanent resident since he was thirteen years old. He asserts that he always intended to remain in the United States and claims to have no friends, family, or other social connections in his birth country of Congo. Kazadi was engaged to a U.S. citizen at the time of his arrest, and she was pregnant with his child. That child, who would now be about three years old, would be a U.S. citizen.

¶ 34 Permitting a defendant who pleads guilty and receives a deferred judgment to pursue section 18–1–410's postconviction relief through Rule 35(c) corresponds to the fairness and justice concerns we sought to protect in *Schneider* because it permits the same postconviction review available to a defendant who pleads guilty and receives a traditional sentence. In addition, it comports with established precedent—*Lafler, Frye, Padilla, Roybal, Pozo,* and Hill—which recognizes that receiving effective assistance of

counsel during negotiation of a plea bargain is guaranteed by the Sixth Amendment and that a defendant has the right to challenge his or her guilty plea on grounds that he or she was denied that constitutional guarantee. Denying a convicted defendant the ability to correct this type of constitutional deprivation through Rule 35(c), when the defendant must face a permanent collateral consequence of the resulting conviction, is antithetical to the purpose of Rule 35(c). *See Edwards v. People,* 129 P.3d 977, 982 (Colo.2006).

## II.

¶ 35 The majority undertakes a plain meaning analysis of a single subsection of Rule 35(c) despite the fact that the word "conviction" is used indiscriminately throughout both section 18–1–410 and Rule 35(c).[7] *See* maj. op. at ¶¶ 11, 16, 18. The majority's interpretation does not credit the principal language of section 18–1–410 that "every person convicted of a crime is entitled as a matter of right to make applications for postconviction review." § 18–1–410(1); Crim. P. 35(c)(2) (same). Instead, the majority examines in isolation Rule 35(c)(3)'s language that "[o]ne who is aggrieved and claiming either a right to be released or to have a judgment of conviction set aside ... may file a motion in the court which imposed the sentence," and concludes that the rule "requires that the trial court must have sentenced the defendant and must have entered a 'judgment of conviction' before a defendant can challenge the conviction."[8] *See* maj. op. at ¶ 18.

---

7. For example, Rule 35(c)(1) permits a defendant to file a postconviction motion on the basis that a significant change in the law can be applied retroactively to his "*conviction* or sentence." (Emphasis added.) Rule 35(c)(2) provides that "every person *convicted of a crime* is entitled as a matter of right to make application for postconviction review" and that review may be sought "[n]otwithstanding the fact that no review of a *conviction of a crime* was sought by appeal within the time prescribed therefor." (Emphasis added.) The rule's authorizing statute provides that "every person *convicted of a crime* is entitled as a matter of right to make applications for postconviction review" and that review may be sought "[n]otwithstanding the fact that no review of a *conviction of a crime* was sought by appeal within the time prescribed therefor." § 18–1–410(1). There are other examples. *See, e.g.,* Crim. P. 35(c)(2)(II) (permitting postconviction

review when "the applicant was *convicted* under a statute that is in violation of the Constitution"); § 18–1–410(1)(b) (same).

8. Although the majority concludes that the language of Rule 35(c)(3) requires both a sentence and a judgment of conviction, the provision is framed in the disjunctive, permitting postconviction review for a claim of "either a right to be released or to have a judgment of conviction set aside." *People v. Valenzuela,* 216 P.3d 588, 592 (Colo.2009) (stating that the disjunctive "or" is ordinarily "assumed to demarcate different categories"); *see also* Crim. P. 35(c)(2)(I) (permitting postconviction review when "the conviction was obtained *or* sentence imposed in violation of the Constitution") (emphasis added); Crim. P. 35(c)(2)(V) (permitting postconviction review on the basis of new evidence that requires "vacation

¶ 36 As we explained over half a century ago, the meaning of "conviction" has "run the gamut of proceedings from a plea of guilty or the verdict of a jury ... to the last expression of this court." [9] *People v. Enlow*, 135 Colo. 249, 255, 310 P.2d 539, 542 (1957) (internal citations omitted). "[T]hat the term 'conviction' may have a different meaning in different statutory contexts" makes it difficult to define. *People v. Jacquez*, 196 Colo. 569, 571, 588 P.2d 871, 873 (1979); *Enlow*, 135 Colo. at 255, 310 P.2d at 542–43 ("To define the word is no easy task.... This court has considered the word under varying circumstances, and has adopted a different definition in each case."). Although "[t]he meaning of 'conviction' may vary depending upon the statute in which it is used and the issue in the particular case," what matters "is the legislative intent behind the use of the word in the statute in question." *Jacquez*, 196 Colo. at 571 n. 2, 588 P.2d at 873 n. 2; *see also Hafelfinger*, 674 P.2d at 376 ("The term 'conviction' may be interpreted differently depending upon the statute in which it is used and the issue in a particular case.").

¶ 37 Based on the variety of definitions given to the term "conviction" in our caselaw, as well as the inconsistent use of the term in the rule and statute, I would conclude that the rule's language is ambiguous. *See State v. Nieto*, 993 P.2d 493, 500–01 (Colo.2000) (stating that a statute is ambiguous when the words chosen by the legislature are "capable of two or more constructions leading to different results"). When confronted with ambiguous statutory language, it is appropriate for us to resort to other aids of statutory interpretation. *See Farmers Ins. Exch. v. Bill Boom Inc.*, 961 P.2d 465, 470 (Colo.1998) (if the statutory language is ambiguous, "courts should construe the language in light of the objective sought to be achieved"). When statutory language is ambiguous, we may consider the purpose of a given statutory provision and the consequences of a given interpretation of that provision. § 2–4–203(1)(a), (e), C.R.S. (2012); *Nieto*, 993 P.2d at 501. "To arrive at the meaning appropriate here, we look to the overall purpose of the statute using the term so as to ascertain the meaning intended by the General Assembly." *Walker*, 199 Colo. at 132, 606 P.2d at 73.

¶ 38 Because I would conclude that the language of Rule 35(c) is ambiguous and because the purpose of section 18–1–410's unique postconviction relief, as implemented by Rule 35(c), is to allow convicted defendants to vindicate their constitutional rights, I would interpret the statute and rule's pro-

of the conviction *or* sentence") (emphasis added). Because a "judgment of conviction" includes both conviction and sentence, *see* Crim. P. 32(b)(3), the majority's analysis renders the meaning of "judgment of conviction" superfluous, *see M.T.*, ¶ 14 (stating that we avoid statutory interpretations "that render any term superfluous").

9. "So numerous and irreconcilable are the definitions of 'conviction,' as found in the adjudicated cases, that authority, as a guide to interpretation, fails us." *People v. Brown*, 87 Colo. 261, 263, 286 P. 859, 860 (1930). For the variety of definitions given to "conviction" in our case law, see, for example: *M.T.*, ¶¶ 11–22 (defining "conviction" to include defendants who have a completed and dismissed deferred judgment); *People v. Barnthouse*, 941 P.2d 916, 918–19 (Colo.1997) (guilty plea followed by a deferred judgment is a "conviction" that attorney was required to report to the office of attorney regulation); *Hafelfinger v. Dist. Court*, 674 P.2d 375, 377 (Colo.1984) (interpreting "conviction" to include deferred judgment for the purpose of serving as a previous felony conviction that determined the amount of the defendant's bond); *Jeffrey v. Dist. Court*, 626 P.2d 631, 640 (Colo.1981) (a guilty plea followed by a deferred judgment constituted a "conviction" for the purposes of double jeopardy); *Walker v. Dist. Court*, 199 Colo. 128, 133, 606 P.2d 70, 73 (1980) (holding that a "conviction" for the purposes of determining a habitual traffic offender included a plea of guilty); *People v. Dist. Court*, 192 Colo. 375, 376, 559 P.2d 235, 236 (1977) (defining "conviction" in the context of the habitual criminal statute to mean a guilty verdict for which a defendant has been sentenced, regardless of whether an appeal was pending); *Rodriquez v. People*, 191 Colo. 540, 542, 554 P.2d 291, 293 (1976) (defining "conviction" in the context of the bail bond statute to mean entry of guilty plea and not sentencing); *Enlow*, 135 Colo. at 255–60, 310 P.2d at 542–44 (a guilty plea accepted by a Colorado court is a "conviction," although the defendant's guilty plea in federal court was not a "conviction" that automatically removed him from his state office); *People v. Gallegos*, 950 P.2d 629, 632 (Colo.App. 1997) (a guilty plea is a conviction for purposes of impeaching a witness's credibility); *People v. Palmer*, 42 Colo.App. 460, 462, 595 P.2d 1060, 1062 (1979) ("[A]cceptance of a guilty plea acts as a conviction.").

nouncement that "every person convicted of a crime is entitled as a matter of right to make application for postconviction review" to mean that a defendant who has pleaded guilty and stipulated to a deferred judgment may challenge his or her conviction.

## III.

¶ 39 I also disagree with the majority's conclusion that our statement in *People v. Carbajal*, 198 P.3d 102, 105 (Colo.2008), that "[a] deferred judgment is not a final judgment, and thus may not be subject to either Crim. P. 35 review or direct appellate review until revoked," is binding precedent that dictates the result in this case. Maj. op. at ¶ 18. In *Carbajal*, we were asked to consider whether the district court exceeded its jurisdiction under the deferred judgment statute by continuing the defendant's deferred judgment beyond the statutory limits. *Carbajal*, 198 P.3d at 106. Before reaching that issue, we addressed whether exercising our original jurisdiction under C.A.R. 21 was appropriate. *Id.* at 105. It was in this context that we made the statement that the majority relies upon as precedent for its holding. However, our statement referred to why we exercised our original jurisdiction because an "[a]ppeal is an inadequate remedy for [the defendant]." *Id.* We did not engage in any textual analysis of Rule 35(c) or its authorizing statute.

¶ 40 Furthermore, *Carbajal* is distinguishable from this case. The defendant in *Carbajal* did not argue that his constitutional right to effective assistance of counsel was violated when he entered his guilty plea, and he was not facing mandatory deportation under federal immigration law for his conviction. We were not asked to address whether review under Rule 35(c) is available in such a situation and did not resolve that issue. Hence, I disagree with the majority that one sentence of dicta provides "precedent for our ruling today." Maj. op. at ¶ 18.

¶ 41 Nor are the three court of appeals cases cited to by the majority—*In re K.W.S.*, 192 P.3d 579, 580–81 (Colo.App.2008); *Manzanares*, 85 P.3d at 611; and *People v. Anderson*, 703 P.2d 650, 652 (Colo.App. 1985)—persuasive on this point. Maj. op. at ¶ 18. Like *Carbajal*, these cases are distinguishable and contain scant analyses of Rule 35(c) or its authorizing statute. *See, e.g., Anderson*, 703 P.2d at 652 ("Crim. P. 35 applies to postconviction remedies. Here, there has been no judgment of conviction and no sentence entered. Therefore, review under this rule is not available.") For these reasons, these cases do not provide adequate or reasoned precedent for this case.

## IV.

¶ 42 Unlike the majority, I do not believe that Rule 32(d) provides an adequate alternative to the postconviction remedies available in Rule 35(c).[10] First, section 18–1–410 guarantees the postconviction relief provided through Rule 35(c), but under Rule 32(d) a defendant "may not, as a matter of right, have his plea of guilty withdrawn or changed." *People v. Chavez*, 730 P.2d 321, 327 (Colo.1986).

¶ 43 Second, while Rule 35(c) entitles a convicted defendant to an evidentiary hearing before a judge upon a showing of good faith allegations, Rule 32(d) offers no guarantee of a hearing whatsoever. *Compare People v. Breaman*, 939 P.2d 1348, 1352 (Colo. 1997) (recognizing that an evidentiary hearing must be held on a Rule 35(c) motion, unless the motion, the files, and the record of the case clearly establish that the defendant's allegations are without merit and do not warrant relief), *with People v. DiGuglielmo*, 33 P.3d 1248, 1250 (Colo.App.2001) (noting the "absence of any requirement that a court hold an evidentiary hearing on Crim. P. 32(d) motion").

¶ 44 Third, and last, the criteria for a successful Rule 35(c) motion are different

---

10. In *People v. Luna*, 852 P.2d 1326 (Colo.App. 1993), the court of appeals concluded that a defendant who was unaware of the deportation consequences of his guilty plea established a fair and just reason to withdraw his guilty plea before he was sentenced. *Id.* at 1328. Although *Luna* stands for the importance of a defendant's constitutional right to be advised of the deportation consequences associated with his or her guilty plea, *Luna* did not involve a deferred judgment and thus is inapposite to the analysis of whether Rule 32(d)'s relief is an adequate substitute for the relief provided by Rule 35(c).

than that of a Rule 32(d) motion. To establish a Rule 35(c) claim of ineffective assistance of counsel, a defendant must show: (1) that the acts of counsel were outside the range of professionally competent assistance; and (2) that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. *People v. Cole*, 775 P.2d 551, 554 (Colo.1989) (applying *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To succeed on a Rule 32(d) motion to withdraw a guilty plea, the defendant must demonstrate "a 'fair and just reason' for the withdrawal," such as "where a defendant may be surprised or influenced into a plea of guilty when he had a defense; where a plea of guilty was entered by mistake or under a misconception of the nature of the charge" or where "fear, fraud, or official misrepresentation" were alleged. *Maes v. People*, 155 Colo. 570, 575, 396 P.2d 457, 459 (1964); *see also People v. Lopez*, 12 P.3d 869, 871 (Colo.App.2000). The defendant must also show that withdrawal of the plea will cause no prejudice to the prosecution. *People v. Chippewa*, 751 P.2d 607, 611 (Colo.1988) ("The record does not reflect that the prosecution would have been prejudiced in any way by withdrawal of the guilty plea."); *see also* ABA Standards of Criminal Justice, Pleas of Guilty, Standard 14–2.1(a) (3d ed. 1999). On appeal, the court may examine whether the defendant promptly moved for the withdrawal and whether "justice will be subverted" if the motion is denied. *Crumb v. People*, 230 P.3d 726, 730 (Colo.2010).

¶ 45 To require a defendant who has received a deferred judgment in exchange for his or her guilty plea to trade Rule 35(c)'s unique protection for constitutional violations for a Rule 32(d) motion to withdraw a plea of guilty is inappropriate. By pleading guilty to a felony and not receiving the benefits of the deferred judgment procedure, a defendant would preserve his or her right to Rule 35(c)'s protections. It is a bedrock principle of our system of criminal justice that a convicted defendant's ability to vindicate constitutional injustice should not be compromised.

¶ 46 Nor does the majority consider the practical consequence of its conclusion that Rule 32(d) and Rule 35(c) operate at different phases of the criminal proceeding, with Rule 35(c)'s relief becoming available only upon the completion of the procedural step of entry of judgment and sentence. Maj. op. at ¶ 20. Under the majority's holding, then, it would seem that a defendant would be permitted to pursue a Rule 32(d) motion to withdraw a guilty plea before entry of judgment and sentence and, assuming that motion failed, to pursue that claim a second time under Rule 35(c) after the entry of judgment and sentence. Thus, Rule 35(c)(3)(VI)'s requirement that a trial court deny "any claim that was raised and resolved in a prior appeal or postconviction proceeding on behalf of the same defendant" would not apply to Rule 32(d) motions raised before entry of judgment and sentence. Therefore, although one purpose of postconviction motions is to bring finality to a case, the majority's construction of Rule 35(c) would prolong the process. *See Schneider*, 25 P.3d at 760, *Rodriguez*, 914 P.2d at 252.

¶ 47 For these reasons, I disagree with the majority that Rule 32(d) provides an adequate alternative to Rule 35(c) for a defendant who received a deferred judgment on a plea and who seeks to challenge the constitutional validity of that plea.

## V.

¶ 48 I believe the majority's construction of Rule 35(c) is inconsistent with the rule's authorizing statute and improperly limits the postconviction rights given by that statute to defendants like Kazadi. Thus, I would hold that Kazadi may attempt to vindicate his constitutional rights through Rule 35(c) and that he has alleged facts in his postconviction motion that, if true, would entitle him to a postconviction hearing.

¶ 49 Under Rule 35(c)(3), a court must hold an evidentiary hearing unless the motion, files, and record of the case clearly establish that the allegations of the motion are without merit and do not warrant postconviction relief. *White v. Dist. Court*, 766 P.2d 632, 634 (Colo.1988). To warrant a hearing, a defendant need only assert facts that, if true,

would provide a basis for relief. *People v. Simpson*, 69 P.3d 79, 81 (Colo.2003). A defendant alleging ineffective assistance of counsel in a Rule 35(c) motion may be entitled to an evidentiary hearing. *People v. Thomas*, 867 P.2d 880, 886–87 (Colo.1994) (holding defendant was entitled to an evidentiary hearing, rather than a judgment on the pleadings, on his Rule 35(c) motion alleging ineffective assistance of counsel).

¶ 50 To establish a claim of ineffective assistance of counsel, a defendant must show that: (1) counsel's performance was outside the wide range of professionally competent assistance; and (2) the defendant was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 687–88, 104 S.Ct. 2052; *People v. Cole*, 775 P.2d 551, 553–54 (Colo.1989). The *Strickland* test also applies in the context of a guilty plea. *Hill*, 474 U.S. at 58, 106 S.Ct. 366. The voluntariness of a guilty plea entered by a defendant represented by counsel depends in part upon whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. *See Pozo*, 746 P.2d at 526.

¶ 51 Here, Kazadi signed a Crim. P. 11 advisement form that included information about the possible immigration consequences of pleading guilty. Specifically, the advisement form warned Kazadi that he "may" face deportation by virtue of his guilty plea and that he had "been advised that for certain felonies, federal statutes could require removal and permanent exclusion." In his motion for postconviction relief, however, Kazadi contends that his counsel failed to so advise him, and that he would not have pleaded guilty had he known he would be subject to mandatory deportation and permanent exclusion under federal immigration law. In summarily denying his motion, the trial court reasoned that Kazadi was aware of the possible immigration consequences of pleading guilty by virtue of his having signed the Rule 11 form and therefore suffered no prejudice.

¶ 52 Despite Kazadi having signed this advisement form, I remain unconvinced that the motion, files, and record of the case clearly establish that Kazadi is not entitled to a hearing on his ineffective assistance of counsel claim. The record is unclear whether Kazadi's attorney advised him of the probable outcome or consequences of his decision to plead guilty. *See Pozo*, 746 P.2d at 529; ABA Standards for Criminal Justice, Prosecution Function and Defense Function, § 4–5.1, commentary (3d ed. 1993) ("The decision to plead guilty can be an intelligent one only if the defendant has been advised fully as to his or her rights and as *to the probable outcome*.").I find it difficult to presume that Kazadi knew the probable outcome of pleading guilty to an offense that would subject him to mandatory deportation and permanent exclusion from the United States. Kazadi has been living in the United States as a lawful permanent resident since childhood, and he claims to have no friends, family, or other connections in his birth country of Congo. Under these circumstances, I would conclude that Kazadi is entitled to a hearing on his Rule 35(c) claim.

¶ 53 For these reasons, I respectfully dissent.